UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                  **Hon. Hugh B. Scott**

                v.                                         09CR329A

                                                     **Order**

Thamud Eldridge, Kashika Speed,
Kevin Allen, and Galen Rose,

                      Defendants.

Among the various motions pending in this matter is defendant Eldridge's motion seeking to unseal the search warrant application to determine whether a file a motion to challenge the search of 118 Homer Street (Docket No. 147). The residence at issue was that of Tanya Calloway, who the defendant describes as his girlfriend. The defendant asserts that he had given her some of his personal property to hold while he was incarcerated. The government challenged the defendant's standing to challenge the search of this residence. The Court directed that the defendant submit an affidavit and legal arguments establishing such standing. (Docket No. 156). The defendant was directed to file such papers by May 25, 2012 and the government was directed to file a response by June 1, 2012.

On May 25, 2012, the defendant filed a supplemental motion and affidavit supporting his claim that he has standing to challenge the search at 119 Homer Street (the residence of Tanya Calloway, his girlfriend) because he used that property to store his private belongings while he

1

was incarcerated. Eldridge claims that a bailee/bailor relationship exists, and that he retained an expectation of privacy in the storage of his personal property. The defendant relies upon <u>United States v. Perea</u>, 986 F.2d 633 (2d Cir.1993). In <u>Perea</u>, the Court held that in order to have standing to challenge a search, the defendant must demonstrate "(a) that he had an expectation of privacy that society is prepared to recognize as reasonable, and (b) that he had conducted himself and dealt with the property in a way that indicated a subjective expectation of privacy." <u>Perea</u>, 986 F.2d at 639. There, the defendant was paid to keep a duffel bag in his apartment for another person. The Court in <u>Perea</u> held that "in the Fourth Amendment context, bailees can have sufficient interest in bailed property to give them standing to object to its seizure or search." <u>Perea</u>, 986 F.2d. at 640. (Docket No. 157). In the instant case, Eldridge is not a bailee, but a bailor. <u>Perea</u> does not discuss the Fourth Amendment rights of bailors. Indeed, the Second Circuit in <u>Perea</u>, in reversing the District Court, noted that the Court below had relied upon <u>Rawlings v. Kentucky</u>, 448 U.S. 98 (1980), which could be distinguished from the facts in <u>Perea</u> because <u>Rawlings</u> "involved the privacy expectations of the narcotics' owner who had relinquished custody, i.e., the ***bailor***; it did not involve the privacy interests of the person in whose purse the narcotics had been placed, i.e., the ***bailee***." <u>Perea</u>, 986 F.2d. at 641. As discussed more fully below, in <u>Rawlings</u>, the defendant had placed narcotics in the purse of another individual just prior to being arrested, in what was termed a "sudden bailment." The Supreme Court held that under such circumstances, the defendant did not have a legitimate expectation of privacy in the individual's purse.

The defendant also relies upon <u>United States v. Miller</u>, 148 F.3d 207 (2d. Cir. 1998). In <u>Miller</u>, the defendant was accused, among other things, of transporting minors in interstate

2

commerce for the purposes of prostitution. The defendant had been residing at a hotel with the girls.  It appears that upon their arrest at another location, one of the girls told the police that they had left (incriminating) property at the hotel. Police contacted the hotel manager who advised that because the guests had not paid their hotel bill, the property belonging to Miller and the girls was packed and stored in a different room. The hotel manager told the police that he intended to dispose of the property. A search warrant was obtained for the room the three individuals had occupied, as well as for the room in which the property was being stored. Subsequently, Miller claimed that he asked the hotel manager to pack up the belongings and to "store them safely" for him. Thus, he made a motion to suppress the evidence. The District Court held that Miller lacked standing to protest the search because he had no expectation of privacy in the room in which the property was stored.  The District Court relied upon United States v. Rahme, 813 F.2d 31, 35 (2d Cir.1987), in which the Second Circuit had held that "[o]nce the hotel, in a position adverse to the guest, properly takes possession of ... luggage, the guest no longer has the right to control access to it and can have no legitimate expectation of privacy in it." Upon appeal, Miller argued that his agreement with the hotel manager to store the property created a bailment, and that under Perea, such a bailment does not terminate his legitimate expectation of privacy. Miller, 148 F.2d. at 210.  Upon appeal in Miller, the Second Circuit held:

> The issue whether Miller had standing to challenge the search is a close one. While the reasoning in Rahme makes good sense, this case involves several complicating factors not present in that case. The government has not disputed that Lewis agreed to store Miller's property. Therefore, it is arguable that at least for some length of time, Miller had an expectation of privacy in the goods that society might consider reasonable **whether or not payment was involved**. Lewis's statement that he was getting ready to dispose of the goods further complicates matters.

3

Miller, 148 F.2d. at 214 (emphasis added). Ultimately, the Second Circuit in Miller determined that they did not have to decide the issue in that case:

> We need not decide the standing issue, however, and we therefore express no opinion upon it. Even assuming for argument that Miller had standing and that the business cards, cell phone, beepers, and hotel directory should not have been admitted, the government is correct that any error was harmless beyond a reasonable doubt. The items seized during the search establish only that Miller and the girls ran a massage business. Notwithstanding Miller's suggestion that he would have disputed the existence of the massage business but for the admission of the disputed materials, the existence of BMI [Body Masseuse International] was established by overwhelming evidence, including the testimony of MG and LK, Miller's tape-recorded statement to Martinez that he had a girl on an outcall, Miller's post-arrest admission that he ran a massage business with the girls, and the fact that when MG was found after Miller's arrest, she was handing out BMI business cards at a downtown hotel.

Miller, 148 F.2d. at 214.

The government has not responded to the defendants' papers.

It appears that the Second Circuit has not directly addressed the Fourth Amendment rights of an individual who has left personal property in storage with another while incarcerated. The Ninth Circuit, in United States v. Johns, 851 F.2d 1131 (9th Cir. 1988), has held that an individual has an expectation of privacy in a rental storage unit. In doing so, the Court noted that "[n]either ownership nor presence are required to assert a reasonable expectation of privacy under the Fourth Amendment. A 'formalized arrangement among defendants indicating joint control and supervision of the place is sufficient to support a legitimate expectation of privacy.' " Johns, 851 F.2d. at 1136 citing to United States v. Broadhurst, 805 F.2d 849, 851-52 (9th Cir.1986). Similarly, whether or not the defendant stored items in an apartment was cited as one

4

of the indicia to consider when determining if the defendant had standing to challenge the search of the apartment. United States v. Reyes-Bosque, 596 F.3d 1017 (9th Cir. 2010). See also United States v. Davis, 361 Fed.Appx. 704 (8th Cir. 2010)(standing did not exist where the defendant failed to show, among other things, that he did *not* store personal items at the residence which he admitted to owning); Garcia v. Dykstra, 260 Fed.Appx. 887, 892–93 (6th Cir.2008) (unpublished decision) (holding that individuals had standing to pursue a Fourth Amendment claim challenging a search of a storage unit in which they had stored items, even though the unit was leased in another individual's name); United States v. Waller, 426 F.3d 838, 844 (6th Cir.2005) (holding that the defendant maintained legitimate expectation of privacy in closed bag he had requested residents of searched apartment to store for him, when he had not told residents the contents of bag and residents believed they did not have the authority to open it); United States v. Salinas–Cano, 959 F.2d 861, 864 (10th Cir.1992)(People generally have a reasonable expectation of privacy in a storage unit, because storage units are secure areas that command a high degree of privacy.).

In his affidavit, Eldridge states when he was incarcerated after December 7, 2005, Calloway took possession of his personal belongings, clothes, books and other personal items. (Docket No. 157-1 at ¶ 6). He states that he executed a Power of Attorney granting Calloway authority to handle his affairs while he was incarcerated and that this Power of Attorney was in force at the time of the search of 118 Homer Street. (Docket No. 157-1 at ¶ 7). Eldridge asserts that he has used, and continues to use, 118 Homer Street as his mailing address apart from his residence in prison, and that he intends to reside at that address when he is released from prison. (Docket No. 157-1 at ¶¶8-9). Eldridge states that had an "expectation of privacy in 118 Homer

5

Street to the extent that [his] personal property stored there was private, secure, and in the custody of the woman to whom I am in a committed relationship and who has Power of Attorney over my affairs." (Docket No. 157-1 at ¶ 10).

In light of these unrefuted representations by Eldridge, the Court finds that Eldridge had a legitimate expectation of privacy in 118 Homer Street to challenge the search of that residence relating to his personal property stored at that location. Unlike Rawlings, this was not a "sudden bailment" wherein minutes before being arrested the defendant placed contraband into the purse of another individual who he had known for only a few days. Further, in Rawlings, there was a dispute as to whether the individual had agreed to allow the defendant to store the narcotics in her purse. There, the Supreme Court found that "the precipitous nature of the transaction hardly supports a reasonable inference that petitioner took normal precautions to maintain his privacy." Rawlings, 448 U.S. at 105. In the instant case, the undisputed record reflects that Eldridge asked Calloway to store his personal belongings for him while he was incarcerated; that Eldridge asserts that he is in a "committed relationship" with Calloway; that Eldridge used the 118 Homer Street address as his mailing address; that Eldridge intends to reside at 118 Homer when he gets out of prison; and that Eldridge has provided Calloway with a Power of Attorney over his affairs. The Second Circuit has held that the Court is obligated to credit the facts asserted by the defendant and "could not properly deny [a] motion for lack of standing unless the facts ... asserted, seen in the light most favorable to [the defendant], were legally insufficient to sustain his burden." United States v. Hamilton, 538 F.3d 162 (2d. Cir. 2008). The fact that Eldridge did not live at the residence is not, by itself, determinative. In Hamilton the Second Circuit held, "there is no authority for the proposition that one need live in the premises, or exercise control

6

over them, in order to enjoy a privacy interest in those premises." Hamilton, 538 F.3d. at 169. In this regard, the Second Circuit held:

> Privacy interests have been found with respect to business premises and storage lockers. See Chuang, 897 F.2d at 649 ("It is well-settled that a corporate officer or employee in certain circumstances may assert a reasonable expectation of privacy in his corporate office, and may have standing with respect to searches of corporate premises and records."); Johns, 851 F.2d at 1136 (finding reasonable expectation of privacy in rented storage space). They have been found where one was merely a guest at the premises. Olson, 495 U.S. at 99, 110 S.Ct. 1684. Nor has possession of a key or a deed or lease in one's own name been deemed indispensable to establishment of a privacy interest, where the claimant's understanding with those in charge of the premises was the basis of the expectation of privacy.

Hamilton, 538 F.3d. at 169. In light of the Second Circuit's approval of Johns as cited in Hamilton, as well as the suggestion contained in the language quoted above in Miller, it appears that the Second Circuit recognizes that an individual may have a subjective expectation of privacy in property he places in storage and that society would recognize this expectation as a reasonable one regardless if the defendant has paid the storage fees. Similarly, under the circumstances presented here, it does not appear unreasonable for Eldridge to have had an expectation of privacy in the property he gave to Calloway for storage even without a formal bailment contract, and thus, he has standing to challenge a search warrant directed at searching the area in which that property is stored. See United States v. Fields, 113 F.3d 313, 320 (2d Cir.1997) ("To contest the validity of a search, a defendant must demonstrate that he himself exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one the society is willing to accept as reasonable.").

Upon review of the totality of the circumstances, Eldridge possessed a legitimate

subjective expectation of privacy with respect to the personal property Calloway stored for him at her residence. Based on the above, and the fact that the government has not refuted the defendant's assertions or otherwise responded with respect to this issue, the Court finds that Eldridge has standing to challenge the search of 118 Homer Street.

The fact that Eldridge has standing to challenge the search of 118 Homer Street with respect to his property does not mean that the record reflects that the police lacked probable cause sufficient to obtain a warrant for the search of that premises. Indeed, the defendant has not yet filed a motion to suppress the evidence obtained as a result of that search, but instead seeks an opportunity to review the search warrant application and an inventory of what evidence was obtained as a result of the search. (Docket No. 147 at page 4). The government has maintained that disclosure of the search warrant affidavit is inappropriate because it would "create an environment ripe for witness intimidation." (Docket No. 150 at page 6). **On or before June 20, 2012, the government is directed to provide the Court, for *in camera* review, an unredacted copy of the search warrant and supporting affidavits, along with a proposed redacted version which might be could be produced to the defendant without compromising the safety of any confidential sources (still unknown) to the defendant.**

The Court will determine whether a hearing regarding these issues will be included among the subjects to be explored at the evidentiary hearings set for June 21-22, 2012.

So Ordered.

                                                               */s/ Hugh B. Scott*
                                                         United States Magistrate Judge
                                                         Western District of New York

Buffalo, New York
June 12, 2012