UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                                    **DECISION AND ORDER**
                                                    09-CR-329A

v.

KASHIKA SPEED and
GALEN ROSE,

                              Defendants.

---

## I. INTRODUCTION

Pending before the Court are motions by defendants Kashika Speed ("Speed") (Dkt. No. 193) and Galen Rose ("Rose") (Dkt. No. 189) for release from custody on reasonable bail conditions. Speed argues that his detention has stretched to about 44 months because the Government released new information since the last time that he applied for bail. (*See* Dkt. Nos. 128, 155.) The new information prompted the Court to schedule additional evidentiary hearings regarding destruction of gun evidence and regarding certain identification procedures. According to Speed, he is no closer to trial than he was when he last applied for bail, and the Government is wholly responsible for the additional delay. Given the recent decisions in *U.S. v. Briggs*, 697 F.3d 98, 103 (2d Cir. Oct. 9, 2012) and *U.S. v. Rodriguez*, No. 09-CR-331A, 2012 WL 6690197 (W.D.N.Y. Dec. 21, 2012) (Scott, *M.J.*), as well as the likelihood that this case will

not go to trial in this calendar year, Speed asserts that any further detention would constitute a due process violation.

Rose argues for release because he is caught in the middle of discovery problems, extra motion practice, and additional hearings involving his co-defendants.  Rose has been in custody for about 48 months; Rose sought severance from his co-defendants given all of the proceedings involving them, and his request remains pending.  (*See* Dkt. Nos. 79, 99.)  According to Rose, the charges and the evidence against him rest on inconsistent witness statements that are weak, and yet his continuous pretrial custody is about to exceed 50 months.  Given his family connections to the area and given that he spent almost four years in the area between the time of his initial questioning and the time of his arrest, Rose asserts that reasonable bail conditions are possible and that further detention would constitute a due process violation.

The Government opposes both bail motions.  The Government argues that a significant portion of each defendant's detention traces back to uncoordinated defense pretrial motions and a motion to recuse both the lead prosecutor and the entire United States Attorney's Office for this District.  The Government argues further that Speed's most recent motion practice, if not altogether excessive, does not change the severity of the charges and the strength of the evidence against him.  The Government also cites each defendant's criminal history, which the

United States Probation Office ("USPO") highlighted in separate memoranda dated February 12, 2013 recommending continued detention.

The Court held a bail review hearing for Rose on February 22, 2013 and one for Speed on February 28, 2013. For the reasons below, the Court denies both motions, but without prejudice to revisit the matter and to propose reasonable bail conditions if the Government has not moved to set a trial date by March 14, 2014.

## II. BACKGROUND

### A. *Recent Case History*

The Court and the parties have filed numerous documents concerning the factual allegations in this case. Very briefly, this case concerns allegations that Speed, Rose, and other co-defendants ran a criminal organization in the East Side of Buffalo, New York. The organization allegedly engaged in acts of violence including murder, robbery, extortion, and narcotics distribution. Because the pending motions focus on events that occurred approximately within the past year, the Court will review only the more recent events.

On June 20, 2012, the Government filed a Superseding Indictment. The Superseding Indictment primarily added the allegation that Speed and Rose were involved in the robbery and murder of Thedrus Laster. The Court arraigned all defendants on the Superseding Indictment on June 21, 2012.

On July 2 and 20, 2012, co-defendant Thamud Eldridge ("Eldridge") filed supplemental motions to dismiss Counts 16 and 17 of the Superseding Indictment and to suppress evidence (Dkt. Nos. 168, 170).  On August 14, 2012, Speed filed a motion (Dkt. No. 176) for an extension of time to file submissions following a hearing held previously on May 14, 2012.  The Court granted that motion and allowed Speed to file post-hearing briefing until September 4, 2012. Speed filed his submissions by that date.  On September 27, 2012, the Court granted Eldridge's request to reopen his suppression hearing with respect to certain identification and gun destruction issues.  After one request for an adjournment that Eldridge filed (Dkt. No. 181) and that the Court granted, the Court held the supplemental suppression hearing on November 19, 2012. Following the hearing, Eldridge filed supplemental motions to suppress evidence and to dismiss Counts 16 and 17 of the Superseding Indictment (Dkt. Nos. 186, 187).  Nearly two months later, on January 25, 2013, Rose filed his own motion to dismiss Counts 11 and 12 of the Superseding Indictment (Dkt. No. 190).

As the events outlined above unfolded, Rose's motion and supplemental motion for severance (Dkt. Nos. 79, 99) remained pending.

**B.**     ***Pending Bail Motions***

Speed and Rose now argue in their respective motions that the past year's worth of delay warrants release on due process grounds.  Speed argues that he is no closer to trial than he was a year ago, because of Government mishandling

of discovery in this case. Speed points specifically to three developments on the Government's side that forced him to litigate further to protect his rights: "1) Officer Perrin's admission of beating Eldridge and the related motion to recuse the prosecutor; 2) the destruction of the firearm associated with Counts 16 and 17 (discussed below); and 3) the manner in which the government has handled the Flap homicide (discussed below)." (Dkt. No. 193-1 at 6.) According to Speed, the Court implicitly has attributed recent delay to the Government through its decision to reopen Eldridge's suppression hearing. Because the Government has slowed the case down through no fault of his own and because his detention now has stretched to approximately 44 months with no trial date in sight, Speed concludes that further pretrial detention would be punitive and would constitute a due process violation. In support of release, Speed submits that he would not be a flight risk because he is a lifelong native of Buffalo and has extensive family ties here. Speed proposes that he could live with his wife, who lives with and cares for the three of his four children who live locally.

As for Rose, his argument for release focuses on the consequence of having his severance motions still pending. Rose argues that the years of delay in this case, including the previous recusal motion and the recent events concerning the identification and gun destruction issues, have nothing to do with him. All of those events have pertained to Eldridge or other co-defendants, but Rose is nowhere near a trial date either because no resolution of his severance

5

motions has occurred yet. Rose concludes that his pretrial detention has stretched to approximately 48 months without justification, and that further detention for reasons not pertaining to him would constitute a due process violation. In support of release, Rose submits that his criminal record is old and relatively light and that he has extensive family ties in the Buffalo area. Rose proposes living with his mother if released on bail.

The Government opposes both motions based on the nature of the charges and the delays that Speed and Rose have imposed on themselves. The Government asserts that it has evidence—evidence that prompted the Superseding Indictment—showing that Speed and Rose both were involved in the murder of Thedrus Laster. That evidence adds to evidence that the Government allegedly already had linking Speed and Rose to drug trafficking, robbery, and extortion. As for delays, the Government argues that Speed and Rose joined in the prior recusal motion and that prosecutors had nothing to do with the delay that resulted from that motion. The other motion practice filed in the past year amounts, according to the Government, to little more than efforts to obtain early *Jencks* and *Giglio* material. The Government concludes its opposition by citing to the criminal history of each defendant, noting for Speed in particular that his criminal history could subject him to life imprisonment if convicted on the current charges.

## III. DISCUSSION

### A. *Reconsideration of Bail Generally*

Once the Court has issued a detention order, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened. *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Apart from the due process analysis that the Court addresses below, the basic substantive factors affecting detention have not changed since the Court last addressed bail for each defendant. Each defendant's criminal history has not changed, except perhaps that those histories now are a little older. Speed and Rose continue to face serious charges including the additional allegations from

the Superseding Indictment. While litigating the pending bail motions and other motions in the case, the Government has proffered a significant amount of evidence from witnesses and other sources that, without infringing on the presumption of innocence at trial, would appear to substantiate the allegations against each defendant. The ongoing proceedings concerning the issues of identification and gun destruction might weaken some of the evidence against each defendant but does not affect other evidence that the Government has proffered. Additionally, to the extent that the ongoing proceedings reflect differing interpretations of the available evidence, those differences of interpretation by themselves do not warrant reconsideration of bail.

Under these circumstances, the Court finds no substantive reason under 18 U.S.C. § 3142(f)(2) to revisit bail for either Speed or Rose.

### B. *Analysis of Due Process*

As with certain other aging criminal cases that the Court is managing right now, the more agonizing aspect of the pending bail motions concerns "the oncoming collision between a solid substantive basis for defendant[s'] pretrial detention and defendant[s'] right to due process to avoid indefinite detention." *Rodriguez*, 2012 WL 6690197, at *9. "Every so often, a district court is presented with a problem that is virtually insoluble. This is one of those cases." *U.S. v. Ojeda Rios*, 846 F.2d 167, 168 (2d Cir. 1988). Addressing this dilemma requires careful consideration of constitutional and Second Circuit criteria. "The

8

government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to punishment of the detainee. Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention appears excessive in relation to the nonpunitive purpose. Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual. However, when detention becomes excessively prolonged, it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." *U.S. v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (internal quotation marks and citations omitted). "To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: (i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based, that is, the evidence concerning risk of flight and danger to the safety of any other person or the community." *Id.* at 1043 (internal quotation marks and citations omitted). The Court will address each of these factors in turn.

1. *Length of Detention*

The first factor affecting a possible due-process violation is the total length of defendants' pretrial detention, regardless of any breakdown of responsibility that occurs later in the analysis. *See U.S. v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (beginning due-process analysis by "[f]ocusing first on the duration of confinement" and acknowledging "the total time the defendants have been in pretrial detention"). Courts that measure total pretrial detention count actual detention plus likely prospective future detention; they ignore possible future detention that is only speculative. *See id.* (assessing future scheduling that is "without speculation"); *see also Millan*, 4 F.3d at 1044 ("In weighing potential future detention, however, we take into account non-speculative aspects of future confinement.") (internal quotation marks and citations omitted). "While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and will rarely by itself offend due process." *U.S. v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (internal quotation marks and citations omitted).

Because the first factor in the due process analysis does not address responsibility for delay, Speed and Rose on this point find themselves in the same uncharted territory that the Court described in *Rodriguez*. As of this writing, Speed has been in pretrial custody for about 44 months and Rose for about 48 months. While the Court wants to avoid any sort of formulaic approach to

assessing length of detention, the Second Circuit never has assessed, let alone endorsed, a pretrial detention that exceeded approximately 33 months—not even in instances of international terrorism. *See Rodriguez*, 2012 WL 6690197, at *11 (summarizing current Second Circuit case law). Speed and Rose face far more serious charges than the defendant in *Rodriguez* did, but their potential pretrial detention will run even longer. This Court in *Rodriguez* expressed concern that a trial in the case likely would not occur within the next 12 months, which would push total pretrial detention over 50 months. Here, in contrast, Speed and Rose already are on the verge of crossing the 50-month threshold, with their trials unlikely to occur before late this year. The possibility of a pretrial detention reaching 60 months—*five years*—is a concept utterly foreign to Second Circuit case law as it currently stands. The first factor thus weighs strongly in favor of Speed and Rose.

        2.    *Responsibility for Delay*

Next, the Court will consider the extent to which the Government is responsible for the years that Speed and Rose have spent in pretrial detention. When looking for "responsibility," courts will consider any conduct intended to cause delay. Courts also will charge to defendants time lost to motion practice that could have proceeded in a more efficient or practical way. *Cf. Gonzales Claudio*, 806 F.2d at 341 ("[T]here is some basis for believing that defense counsel could have proceeded more expeditiously by taking a less fragmented

approach to pretrial maneuvering."). In between, though, lies a range of case-management decisions by the Government that warrant at least some of the respect afforded to prosecutorial discretion. *See U.S. v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("[W]e decline to adopt a rule that would deter the government from seeking joint trials (or consenting to severance) as a means of economizing judicial and other resources."). Courts generally avoid micromanaging cases, but respect for prosecutorial discretion does not mean that the Government always should receive complete absolution for decisions whose impact on pretrial detention is foreseeable.

Here, two blocks of time passed through no fault of the Government. The first block of time concerns the recusal motion. Eldridge filed that motion on March 17, 2011. Speed and Rose did not oppose a Government request for extension of time to file a response to that motion. (*See* Dkt. No. 104.) Oral argument did not occur until June 8, 2011. This Court did not issue its order on that motion until October 7, 2011 (Dkt. No. 123). Judge Arcara resolved the issue of recusal on January 31, 2012 (Dkt. No. 138). In total, just over 10 months passed during the pendency of the recusal motion when the Government reasonably would have felt paralyzed with respect to moving the case forward. The second block of time is not a discrete stretch of time *per se* but concerns the continuing pendency of Rose's severance motion. Although all counsel in this case likely are familiar with this Court's custom of deferring severance motions to

12

the respective District Judge, the Court has not issued any formal ruling that one side or the other could appeal to Judge Arcara for further consideration.  Any calculation here would be somewhat arbitrary in nature, but the Court will discount the Government's responsibility for delay in this case by an additional four months based on the severance issue, which would be equivalent to the time that has passed from the filing of supplemental suppression and dismissal motions in December through the present time.  Discounting each defendant's length of detention by 14 months would bring Speed and Rose closer to the range of detention periods that the Second Circuit has considered in this case law.

The parties' other arguments about delay essentially nullify each other.  The Government might be correct that the latest motions do not differ much from motions for early disclosure of *Jencks* and *Giglio* material, but the disclosures that prompted an effort to resolve the issues likely could have been done earlier.  At the same time, defense counsel have filled the docket with motions that have rolled out in stages almost like the pretrial motions seen more commonly in civil litigation.  Under these circumstances, the Court will not attempt a precise accounting of who did what and when, and whether they could have taken those actions earlier.  Since the 14 months mentioned above indisputably were beyond the Government's control, the Court finds that the second factor in the due

process analysis favors the Government for a length of time up to 14 months but is neutral to any other extent.

To help Rose reach a final determination of his request for severance, this Court hereby denies those portions of his pretrial motions (Dkt. Nos. 79, 99) that seek severance, but without prejudice to pursue the issue further with Judge Arcara as counsel may see fit.

3. *Strength of the Proof*

As noted above and without infringing on the presumption of innocence, the final factor in the due process analysis requires the Court to consider the strength of the Government's evidence that defendants pose a risk of flight, a danger to the community, or both. The details of the Court's analysis appear earlier in this Decision and Order. Briefly, Speed and Rose face very serious charges including involvement in murder; the charges and the associated evidence appear to have strengthened over the course of the Government's investigation. Both defendants have extensive criminal histories that include acts of violence, violations of supervision conditions, or both. Combining the charges, the available evidence, and the criminal histories leads the Court to believe that no combination of release conditions would ensure further appearance and would protect the community. This final factor in the due process analysis thus favors the Government.

Overall, then, one factor in the due process analysis strongly favors Speed and Rose while the other two favor the Government. Under these circumstances, the Court will attempt a balanced approach to the pending motions. Continued detention remains appropriate, for now. That said, both sides are cautioned to resolve the remaining issues as expeditiously as possible. Factoring in some pretrial detention that would occur once a trial is scheduled and the parties prepare for it, and assuming no delays between now and then attributable to defendants, if the Government has not moved to set a trial date by March 14, 2014 then Speed and Rose should revisit the issue of bail and whether conditions like the ones proposed in *Rodriguez* would be warranted.

IV.  **CONCLUSION**

For all of the foregoing reasons, the Court denies Speed and Rose's respective motions for bail (Dkt. Nos. 189, 193), but without prejudice to revisit the matter and to propose reasonable bail conditions if the Government has not moved to set a trial date by March 14, 2014.

The Court also denies those portions of Rose's pretrial motions (Dkt. Nos. 79, 99) that seek severance, but without prejudice to pursue the issue further with Judge Arcara.

SO ORDERED.

*/s Hugh B. Scott*
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: March 25, 2013