UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                v.                                    DECISION AND ORDER
                                                            09-CR–329

THAMUD ELDRIDGE, et. al.,

                        Defendants.

## INTRODUCTION

Before the Court are defendants' objections to Magistrate Judge Hugh B. Scott's Report and Recommendation and an appeal from his Decision and Order (Dkt. Nos. 216 and 217) in this multi-defendant case involving allegations of, *inter alia*, racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to distribute controlled substances, kidnaping in aid of racketeering, and unlawful use and possession of firearms.

For the foregoing reasons, and for the reasons set forth by Magistrate Judge Scott, the Court adopts the findings and conclusions set forth in the Report and Recommendation and Decision and Order.

## GENERAL BACKGROUND

Defendants Thamud Eldridge, Kashika Speed, Kevin Allen, and Galen Rose are charged with various offenses including racketeering, racketeering

conspiracy, murder in aid of racketeering, conspiracy to distribute controlled substances, possession of firearms in furtherance of drug trafficking crimes, violent crime in aid of racketeering-kidnaping, Hobbs Act robbery/conspiracy, use, carry and brandish of a firearm during and in relation to and in furtherance of crimes of violence, use, carry and discharge of a firearm during and in relation to crimes of violence causing death, and felon in possession of a firearm. (Dkt. No. 164)

In sum, it is alleged that defendants were members of a criminal organization that engaged in distribution of cocaine, cocaine base, marijuana and heroin and also committed acts of violence in furtherance of their trafficking enterprise, including murder, robbery and extortion. The organization operated principally in the East Side of Buffalo, New York. It is alleged that defendants robbed, murdered and attempted to rob and murder other individuals involved in drug trafficking and that defendants carried, brandished and discharged firearms in furtherance of these activities. The murder counts involve the deaths of Thedrus Laster ("Laster") and Sam Jones ("Jones") who were killed, during separate incidents, in April 2005.

The matter was referred to Magistrate Judge Scott for supervision of pre-trial proceedings. Defendants Eldridge, Speed, Rose and Allen made various pre-trial motions. The Government moved to compel defendant Eldridge to appear in a line-up. The Magistrate Judge conducted evidentiary hearings on

June 21, 2012 and March 28, 2013 and the parties had an opportunity to file post hearing briefs. On June 12, 2013, the Magistrate Judge issued a Report and Recommendation deferring the admissibility of the witness identification to the District Court, but otherwise denying the pre-trial relief sought by defendants. (Dkt. No. 216) On that same day, the Magistrate Judge issued a Decision and Order ordering, among other things, that defendant Eldridge appear in a line-up (Dkt. No. 217) Defendants have filed objections to various portions of the Report and Recommendation and the Decision and Order (Dkt. Nos. 223, 224 and 231) and the Government filed responses (Dkt. Nos. 226, 227, and 237). Oral argument was held on September 9, 2013 and September 11, 2013.

With respect to the Magistrate's recommendations on the dispositive motions, this Court makes a *de novo* determination of those portions of the Report and Recommendation to which objections have been made pursuant to 28 U.S.C. § 636(b)(1). With respect to the Magistrate's orders on the non-dispositive motions, this Court considers only whether the Magistrate's determinations are clearly erroneous or contrary to law pursuant to 28 U.S.C. Section §636(b)(1)(A).

<b><u>Discussion</u></b>

*Defendant Eldridge*

Defendant Eldridge objects to Magistrate Judge Scott's recommendation to deny his motion to dismiss counts 1, 2, 5, 7, 10, 12, 13 and 15 of the superseding

3

indictment based upon the Government's failure to plead, with necessary factual sufficiency, the existence of a criminal enterprise as required under Rule 12(b)(3) of the Federal Rules of Criminal Procedure. Defendant contends that the superseding indictment fails to plead the existence of an entity separate and distinct from defendants, that it fails to plead a relationship between the defendants involved, and that it fails to allege an "on-going" enterprise.

In *United States v. Boyle*, the Supreme Court held that "an enterprise includes any union or group or individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." 556 U.S. 938 (2009) (such enterprise is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function in a continuing unit"). An "association in fact" must have three structural features: a purpose, relationship among those associated with the purpose, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 945-946.

As Magistrate Judge Scott correctly notes, the superseding indictment sufficiently alleges the existence of a criminal enterprise. The indictment alleges that from in or around 2003 and continuing through December 2005, defendants Eldridge, Speed and Allen were members of an enterprise whose purpose was to obtain things of money and value through murder, extortion, robbery and drug trafficking. Another purpose was to protect the power, territory and profits of the

enterprise through violence and intimidation. The indictment alleges that defendants Eldridge, Speed and Allen were a coalition who participated in and directed others to carry out unlawful activities in furtherance of the enterprise's goals, and recruited others to assist them in carrying out the unlawful activities. The means and methods used include drug distribution, robbery, attempted robbery, murders of rivals, use and possession of firearms, and representing themselves as gang members.

Contrary to defendant Eldridge's argument, the Government has sufficiently alleged a relationship among defendants and a time period sufficient to meet the longevity requirement. The indictment contains enough factual detail to appraise defendants of the general nature of the alleged enterprise, and any additional specifics about how the enterprise operated are evidentiary matters to be proven at trial. Such details do not have to be specifically set forth in the indictment.

Finally, this Court is in agreement with Magistrate Judge Scott that there is no merit to defendant Eldridge's argument that "there is no distinction between the defendant and the enterprise." The indictment does not allege that the individuals are the enterprise. Instead, it alleges that they are a "group of individuals associated in fact". *See United States v. Orena*, 32 F.3d 704 (2d. Cir. 704 (2d. Cir. 1994) ("Indictment that alleged; 'The members and associates of the Columbo Organized Crime Family of La Cosa Nostra ('the Columbo family')

constituted an 'enterprise' as that term is described in Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact' sufficiently alleged enterprise").

For these reasons, and for the reasons stated in Magistrate Judge Scott's Report and Recommendation, defendant's motion to dismiss counts 1, 2, 5, 7, 10, 12, 13 and 15 of the superseding indictment for failure to allege facts sufficient to show the existence of a criminal enterprise is denied.

Defendant Eldridge also objects to Magistrate Judge Scott's conclusion that the October 22, 2010 photo array, which resulted in the partial identification of defendant Eldridge, was not impermissibly suggestive or unreliable. In his prior motion before the Magistrate Judge, defendant argued that the October 22, 2010 identification should be suppressed because: (1) the witness had previously failed to make an identification in 2008 and therefore the 2010 identification was not reliable; (2) the notes relating to the 2008 photo array were not memorialized; (3) defendant Eldridge was placed in the same position in both arrays; and (4) the witness told an FBI agent, on a separate occasion, that the individual involved in the shooting had been wearing a mask.

The Magistrate Judge determined that there was nothing *per se* impermissible about placing defendant in two different photo arrays and the fact that defendant was placed in the same position in both photo arrays was not unduly suggestive. The Magistrate also concluded that the fact that the witness

stated she was "50% sure" it was defendant and previously stated the perpetrator was wearing a mask relate to the weight of the identification rather than its admissibility. For these reasons, Magistrate Judge Scott found that the procedures used during the October 22, 2010 photo array were not "so unnecessarily suggestive and conducive to irreparable mistaken identification that they must be suppressed." Magistrate Judge Scott then deferred, to this Court, any questions relating to the witness' ability to view defendant Eldridge and the admissibility of the identification upon review of the factors described in *Young v. Conway*, 689 F.3d 69 (2d. Cir. 2010).

However, the Court finds that *Young v. Conway* is distinguishable from the instant matter, and that an analysis of the factors set forth therein is unnecessary. When a witness has made a pretrial identification, a challenge to that identification and to an in-court identification of the defendant at trial triggers "a one-step or two-step inquiry." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d. Cir. 1990). The first step is to determine whether the pre-trial identification procedures were unnecessarily suggestive. *Id*. at 973. If they were not, the challenge is denied and the reliability of the identification is a question for the jury. *Jarrett v. Headley*, 802 F.2d 34, 42 (2d. Cir. 1986). If the procedures were unnecessarily suggestive, the second step is to determine whether the identification testimony is nevertheless admissible because it is "independently reliable rather than the product of the earlier suggestive procedure." *Id*.

7

Based upon testimony taken at the suppression hearing, Magistrate Judge Scott concluded that the pre-trial identification procedure during the photo array was not unduly suggestive. This Court adopts the Magistrate's credibility findings and conclusions of law and finds, for the reasons set forth in the Report and Recommendation, that the identification procedure used was not unduly suggestive. Thus, this Court does not have to reach the question of whether the identification testimony is independently reliable.[1] Instead, the reliability of the identification procedure, including the fact that the witness stated she was "50% sure it was him", that she initially told an FBI agent that the perpetrator was wearing a mask, and that an extended time period elapsed between the crime and the identification, are all factors left for the jury to weigh and determine. Since the Court has determined that the identification procedure was proper, these arguments address the weight of the evidence rather than its admissibility.

In a separate Decision and Order, Magistrate Judge Scott granted the Government's motion to have defendant Eldridge appear in a line-up, since the witness who made the October 22, 2010 identification stated that she needed to "see him in person" in order to be sure of the identification. (Dkt. No. 217)

---

[1] In *Young v. Conway*, the pretrial identification, in the form of a line-up, was suppressed as a result of an illegal arrest. 698 F.3d 69 (2d. Cir. 2010). Therefore, the Second Circuit considered a series of factors to determine whether the identification was nevertheless admissible because it was independently reliable. This scenario is distinguishable from the present case, where the Court has determined that the prior photo array was not unduly suggestive and that it should not be supressed. Therefore, no independent determination of reliability must be made.

Magistrate Judge Scott also rejected defendant's argument that if the Government was permitted to conduct the line-up, the line-up should be conducted in a "sequential, double-blind manner." [2] *Id*.

Defendant Eldridge appeals from this portion of the Magistrate Judge's Decision and Order. However, he provides no new support for his argument that a standard line-up would be unreliable or unduly suggestive, other than the fact that the Court has inherent authority to impose conditions on the Government's ability to conduct post-indictment procedures. The Court has reviewed the Magistrate Judge's Decision and Order and finds that his determination that the Government presented good cause to request the line-up is neither clearly erroneous nor contrary to law. Likewise, the Court adopts the Magistrate's denial of defendant's request for a "sequential, double-blind" line-up, and reiterates the Magistrate's finding that "the Government assumes the risk to ensure that any line-up procedure utilized is not suggestive or does not otherwise compromise the witness' ability to make an in-court identification of defendant." (Dkt. No. 217)

Lastly, defendant Eldridge objects to Magistrate Judge Scott's denial of his motion to dismiss counts 16 and 17 of the superseding indictment, both of which relate to his alleged use and possession of a firearm. Defendant argues that

---

[2] According to defense counsel, in a "sequential, double blind" line-up, the person conducting the line-up does not know who the defendant is and the witness does not know whether the subject will be displayed at all or the number of individuals to be sequentially displayed.

because Erie County CPS laboratory destroyed the firearm in question before defendant could conduct DNA analysis, the charges surrounding this incident must be dismissed. In the alternative, defendant argues that counts 16 and 17 should be severed from the remainder of the superseding indictment and tried separately, or that the Government should be precluded from introducing any results of the inspection and testing of the firearm.[3]

Spoilation is the destruction or significant alteration of evidence, or "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d. Cir. 2007). The Government has a duty to preserve discoverable evidence, and the Government's loss of evidence may deprive a defendant to his right to a fair trial. *United States v. Rahman*, 189 F.3d 88, 139 (2d. Cir. 1999).

The Second Circuit has found that the "appropriateness and extent of sanctions in such situations depends upon a case-by-case assessment of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof." *United States v. Grammatikos*, 633 F.2d 1013 (2d Cir. 1980) (the proper methodology in

---

[3] The Magistrate Judge recommended denying defendant's motion to dismiss counts 16 and 17, but deferred the remainder of defendant's argument for resolution by this Court.

determining whether to preclude evidence due to the Government's failure to preserve is to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost and the evidence of guilt adduced at the trial").

In order to show that the destroyed or missing evidence would play a significant role in his defense, a defendant must demonstrate that: (1) the evidence possessed an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the Government acted in bad faith. *United States v. Barnes*, 411 Fed. Appx. 365 (2d. Cir. 2011).

Magistrate Judge Scott conducted a lengthy evidentiary hearing regarding the circumstances surrounding the destruction of the firearm. After considering the testimony and evidence offered at the hearing, the Magistrate concluded that there was no bad faith on the part of the Government, and that the destruction was a result of poor communication and the fact that the laboratory procedures do not take into account increased state-federal cooperative procedures. *United States v. Youngblood*, 488 U.S. 55 (bureaucratic error alone is not sufficient basis to infer bad faith on the part of the Government in its destruction of potentially exculpatory evidence); *United States v. Hunley*, 467 Fed. Appx. 897 (2d. Cir. 2012)(Second Circuit upholding this Court's decision not to suppress the firearm evidence even though it was destroyed prior to trial). The Court adopts the

Magistrate's findings in this respect.

Also significantly, the evidence did not possess an exculpatory value which was apparent before it was destroyed and comparable evidence exists since defendant can conduct his own DNA analysis on the sample still available. Defendant Eldridge argues that he is prejudiced by the destruction of the gun because he cannot test the magazine or cartridge for DNA, and this evidence could exculpate him. However, the exculpatory value of this evidence is speculative at best and was certainly not "apparent at the time of destruction." In addition, since the officer stated that there were two individuals in the car at the time of the shooting, the absence of defendant's DNA from those items would not necessarily be exculpatory. Defendant also argues that he is prejudiced since he cannot determine whether two or three shots were fired. Again, this does not constitute exculpatory evidence since it would not prove that he was not involved in the shooting. Comparable evidence exists since defendant can not only cross-examine the Government's witness who performed the DNA analysis, but a sample remains that would allow him to have an independent analysis performed.

For these reasons, and for the reasons cited in Magistrate Judge Scott's Report and Recommendation, the Court adopts the Magistrate's denial of defendant Eldridge's motion to dismiss counts 16 and 17 of the superseding indictment. For these same reasons, the Court also denies defendant's alternative requests to sever these counts or to preclude the Government from

introducing DNA evidence with respect to the firearm.

*Defendant Speed*

Defendant Speed objects to Magistrate Judge Scott's recommendation to dismiss counts 10 through 12 and predicate racketeering act 6 from the superseding indictment. Each of these counts involve the robbery and murder of Laster in April 2005.[4] Defendant claims that the Government's theory of liability is inconsistent with the evidence presented to the grand jury, and that the grand jury received misleading information. Defendant contends that the "only inference to be drawn" from the limited grand jury evidence available is that Speed was identified to the grand jury as the shooter of Laster. However, sixteen months after the indictment was returned, the Government advised defense counsel that an eyewitness identified Rose as the shooter. Defendant Speed argues that allowing the Government to proceed under this "new theory of culpability" violates his due process rights.

The Court is in agreement with Magistrate Judge Scott that "defendants have not demonstrated any basis to conclude that the Government's trial theory

---

[4] Predicate racketeering act 6 alleges that Speed and Eldridge caused the death of Laster in the course of robbing him; count 10 charges that Speed and Eldridge caused the death of Laster in aid of racketeering; count 11 alleges that Eldridge, Speed and Rose conspired to rob Laster in violation of the Hobbes Act; and count 12 alleges that Eldridge, Speed and Rose unlawfully used, carried and discharged firearms and, in the course of this violation, caused Laster's death. Defendants Eldridge, Speed and Rose are also charged with aiding and abetting the various offenses stemming from Laster's murder.

13

is fundamentally inconsistent with the evidence presented to the grand jury or that the grand jury received any misleading information." (Dkt. No. 216)  Defendant Speed was never identified, in either indictment or in the Government's discovery, as the shooter of Laster.  Indeed, the superseding indictment does not state which of the three defendants charged in connection with Laster's death was the actual shooter.  Defendant's claim that the Government, "through process of elimination", identified Speed to the grand jury as the shooter, is purely speculative and not supported by the record.

The Court is also in agreement with the Magistrate Judge that the Government is not obligated, based upon the instant charges, to prove which of the three defendants allegedly involved actually fired the shots that killed Laster. Counts 10 and 11 also charge defendants Eldridge, Speed and Rose with aiding and abetting pursuant to Section 2 of Title 18 of the United States Code. Magistrate Judge Scott cites the analogous Second Circuit decision in *United States v. Conception*, which holds that an individual can be held liable under Section 2(b) of Title 18 of the United States Code for a violation of Section 1959 of Title 18 of the United States Code, even if the Government is unable to identify the person who actually killed the victim involved.  983 F.2d 369, 383-384 (2d. Cir. 1993).

For these reasons, and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, the motion to dismiss predicate

14

racketeering act 6 and counts 10 through 12 of the superseding indictment is denied.

Defendant Speed also objects to the Magistrate Judge's denial of his motion to suppress the statements he made at the time of his arrest on July 14, 2009. Magistrate Judge Scott held a suppression hearing during which FBI Special Agent Vanessa Paris testified that at the time of Speed's arrest, Speed asked her "what it was all about". Agent Paris then advised him that the arrest warrant involved incidents that were "not recent". Agent Paris testified that without being prompted with any questions, Speed immediately began discussing various illegal activities. Following these unsolicited statements, Agent Paris read Speed his *Miranda* rights. Defendant agreed to waive his rights and speak with the agents, and then proceeded to make a number of incriminating statements.

Special Agent Paris further testified that the interview started while Speed was being processed by the United States Marshal's, and that it continued in a holding cell on the fifth floor of the United States Courthouse. Defendant Speed was then taken back down to an interview room on the second floor of the Courthouse, at which point Agent Paris and Speed were joined by FBI Special Agent Falconetti, who took over the questioning. Other agents also joined the interview at some point. According to the hearing testimony, defendant Speed was arrested at 10:00 a.m. in the morning and the interview was concluded by 2:45 p.m.

Defendant claims that Agent Paris' statement was the functional equivalent of interrogation, and that the lapse in time during the interview and other changed circumstances, including the change of location and introduction of new agents, required new *Miranda* warnings. The Court rejects these arguments. Agent Paris did not ask Speed a question, nor did she say anything that would serve to provoke a response from him. The Magistrate correctly concluded that Agent Paris' comment to the effect that Speed was being arrested for events that were "not recent" does not amount to an "interrogation-like" statement likely to elicit an incriminating response. The Court also concurs with the Magistrate's finding that the facts that defendant was brought to a different floor in the Courthouse, that other agents joined the interview, and that Agent Falconetti took over the questioning at some point, do not constitute changes in circumstances requiring new *Miranda* rights. *See* Dkt. No. 216, pgs. 15-16 (relevant case law cited therein).

For these reasons and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, defendant Speed's motion to suppress his July 14, 2009 statements is denied.

*Defendant Rose*

Defendant Rose appeals from the Magistrate's denial of his motion to suppress evidence of gunshot residue. Defendant argues that this evidence is inadmissible under *Daubert* and Rule 702 of the Federal Rule of Evidence. The

Magistrate determined that gunshot residue evidence complies with the requirements of Rule 702 in that: (1) it consists of scientific, technical or other specialized knowledge; and (2) it will aid the jury or other trier of fact to understand or resolve an issue.  The Magistrate Judge also took note of cases, both inside and outside of this Circuit, where gunshot residue evidence was found to be admissible.  *See e.g., United States v. Paloscio*, 2002 WL 1585835 (SDNY 2002) (expert testimony regarding gunshot residue evidence determined to be admissible and defendant's challenges went to the evidence's weight rather than its admissibility).

Defendant fails to cite any relevant case law supporting his argument that this type of evidence is unreliable or should otherwise be precluded.  In addition, no errors in the procedure or tests used in this case have been identified.  As to defendant's contentions that the gunshot residue testing is unreliable because there may be other sources of component particles, the Court is in agreement with the Government and the Magistrate Judge that these arguments go to the weight of the evidence rather than its admissibility.

For these reasons and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, defendant Rose's motion to preclude the gunshot residue evidence is denied.

## **Conclusion**

For the foregoing reasons and consistent with this Decision and Order, the

Court adopts the proposed findings and conclusions set forth in Magistrate Judge Scott's June 12, 2013 Report and Recommendation. (Dkt. No. 216) The Court also denies defendant Eldridge's appeal from certain portions of Magistrate Judge Scott's June 12, 2013 Decision and Order. (Dkt. No. 217)

The parties are next scheduled to appear before this Court on December 12, 2013 to address defendant Allen and defendant Eldridge's motion for an evidentiary hearing.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: November 20, 2013