UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

          v.                                        DECISION AND ORDER
                                                        09-CR–329

KASHIKA SPEED, et al,

                       Defendants.

---

## **INTRODUCTION**

Before the Court is defendant Kashika Speed's motion for reconsideration of Magistrate Judge Hugh B. Scott's Decision and Order denying defendant's motion for release from custody. For the following reasons, the Magistrate Judge's Decision and Order is affirmed and defendant Speed's motion for reconsideration is denied.

## **BACKGROUND AND RELEVANT FACTS**

Defendants Thamud Eldridge, Kashika Speed, Kevin Allen, and Galen Rose are charged with various offenses including racketeering, racketeering conspiracy, murder in aid of racketeering, conspiracy to distribute controlled substances, possession of firearms in furtherance of drug trafficking crimes, use, carry and discharge of a firearm during and in relation to crimes of violence causing death, and felon in possession of a firearm. (Dkt. No. 164)

Specifically, it is alleged that defendants were members of a criminal

organization that engaged in the distribution of cocaine, cocaine base, marijuana and heroin and also committed acts of violence in furtherance of their drug trafficking enterprise, including murder, robbery and extortion. The organization operated principally on the East Side of Buffalo, New York. It is alleged that defendants robbed, murdered and attempted to rob and murder other individuals involved in drug distribution and that they carried, brandished and discharged firearms in furtherance of these activities. The murder counts involve the deaths of Thedrus Laster and Sam Jones who were killed, in separate incidents, in April 2005.

Defendant Speed has been incarcerated since on or about September 29, 2009, the time of his initial arraignment. On February 8, 2013, Speed filed a motion for release from custody on reasonable bail conditions. (Dkt. No. 193) Speed argued that his detention had reached 44 months as a result of Government delay as well the Government's untimely release of additional information, and that any further detention would constitute a due process violation.[1] A bail review hearing was held before the Magistrate Judge on February 28, 2013. On March 25, 2013, Magistrate Judge Scott denied defendant's motion for release from custody, but without prejudice to revisit the

---

[1] This matter has been referred to Magistrate Judge Scott for supervision of all pretrial proceedings. For a detailed account of the recent pretrial motions which are relevant to defendant's bail request, see Magistrate Judge Scott's Decision and Order denying the motion for release. (Dkt. No. 200)

matter and to propose reasonable bail conditions if the Government has not moved to set a trial date by March 14, 2014. (Dkt. No. 200)

Defendant Speed filed the instant motion asking this Court to reconsider the Magistrate Judge's Decision and Order. (Dkt. No. 206) He argues that his continued pretrial detention is a violation of his due process rights. The Government filed a response in opposition. (Dkt. No. 211) Oral argument was held on September 18, 2013, at which time the Court considered the matter submitted.

## **DISCUSSION**

Section 3142(e) of Title 18 of the United States Code allows an individual to be detained prior to trial if it is found that no condition or combination of conditions "will reasonably assure the appearance of the [defendant]...and the safety of any other person and the community. *See* 18 U.S.C. §3142(e); *United States v. El-Hage*, 213 F.3d 74 (2d. Cir. 2000). The Second Circuit has further explained that: "[t]he government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to punishment of the detainee." *United States v. Millan*, 4 F.3d 1038, 1043 (2d. Cir. 1993); *El-Hage*, 213 F.3d at 79 ("It is well-settled that so long as pretrial detention is administrative rather than punitive, it is constitutional.") However, due process places limits upon how long an accused may be detained in prison without a trial. *El-Hage*, 213 F.3d at 76. "[E]xactly how long such

3

detention may extend before violating due process limits...has not been fixed in the law." Id.

In order to determine whether the length of pretrial detention has become sufficiently excessive to create a due process violation, a district court is instructed to consider: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which detention is based, namely, the evidence of risk of flight and dangerousness. *Millan*, 4 F.3d at 1043; *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d. Cir. 1994). The Court has considered each of these factors in turn and concludes, in agreement with the Magistrate Judge, that defendant's continued detention does not violate his due process rights at this time.

While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and "will rarely by itself offend due process." *Milan*, 4. F.3d at 1044; *quoting United States v. Orena*, 986 F.2d 628, 631 (2d. Cir. 1993). Indeed, the Second Circuit has held, in certain circumstances, that periods of pre-trial detention of up to and including 40 months do not violate a defendant's due process rights. *See United States v. Vondette*, 5 Fed. Appx. 73, 75-76 (2d. Cir. 2001) (holding that defendant's 40 month pretrial detention did not violate due process where defendant was leader of a drug enterprise and faced life imprisonment); *United*

States v. El-Hage*, 213 F.3d 74, 78-81 (2d. Cir. 2000) (finding, after weighing all factors, that a 30 to 33 month pretrial detention did not violate defendant's due process rights); *United States v. Milan*, 4 F.3d 1038 (2d. Cir. 1993) (a 30 month period of detention did not violate defendant's due process rights).

Here, defendant has been incarcerated for approximately 50 months. By the time this case goes to trial, his detention time may be close to 55 months. As recognized by the Magistrate Judge, this is an extremely prolonged period of time to be detained and awaiting trial. In fact, it is longer than the extensive periods of pretrial detention upheld by the Second Circuit and discussed above. Therefore, the length of defendant Speed's pre-trial detention weighs strongly in favor of his motion for release.

However, as previously indicated, the length of detention is not the only factor this Court must evaluate in evaluating defendant's motion. The second factor to be considered is the extent to which the Government is responsible for the delay. Here, the Magistrate Judge found that two distinct periods of time passed through no fault of the Government. The Magistrate Judge attributed the first block of excusable time, a period of just over ten months, to the resolution of defendants' motion to recuse the entire United States Attorney's Office for the Western District of New York and Assistant United States Attorney ("AUSA") Joseph Tripi. This motion came about after AUSA Tripi disclosed certain statements made by a City of Buffalo police officer that excessive force had been

5

used against defendant Eldridge.[2] Magistrate Judge Scott concluded, and this Court agrees, that "just over 10 months passed during the pendency of the recusal motion when the Government reasonably would have felt paralyzed with respect to moving the case forward." (Dkt. No. 200)

The Court rejects defendant's arguments that the Government is partially responsible for the delay caused by the recusal motion. The Government acted appropriately by disclosing, to defense counsel, the statements made to AUSA Tripi regarding the alleged excessive use of force against defendant Eldridge. The Government should not be penalized for its good faith disclosures which resulted in defendants' recusal motions and subsequent delay.

The Court further rejects defendant's argument that the Government should have severed Counts 16 and 17 of the Superseding Indictment, which relate only to defendant Eldridge and form the basis for the recusal motion. Count 16 charges defendant Eldridge with possession and discharge of a firearm in furtherance of the drug trafficking crime alleged in Count 3 of the Superseding Indictment and Count 17 charges defendant Eldridge with being a felon in possession of a firearm as a result of the same conduct. These counts are directly related to, and are intertwined with, the remaining allegations in the

---

[2] Defendants filed their motion for recusal on March 17, 2011. After the Government was given an extension of time to respond, oral argument was held on June 8, 2011. The Magistrate Judge issued an Order on October 7, 2011 and this Court ultimately resolved the issue of recusal on January 31, 2012.

Superseding Indictment. They have been properly joined pursuant to Federal Rule of Criminal Procedure 8 and for reasons of judicial economy. *See United States v. Amato*, 15 F.3d 230, 236 (2d. Cir. 1994) (Rule 8 provides that counts may be joined in a single indictment where the counts are of the same or similar character, are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan...or where the same evidence may be used to prove each count); *United States v. Feyrer*, 333 F.3d 110, 114 (2d. Cir. 2003) (for reasons of "economy, convenience and avoidance of delay", there is preference in the federal system for joint trials).

Moreover, it is important to note that Speed joined in Eldridge's motion for recusal. (Dkt. No. 101) It would be illogical to allow defendant Speed to receive the benefit of joining in the recusal motion at the time it was filed, only to now successfully contend, months later, that the Government should have severed the counts relating only to defendant Eldridge and the recusal motion in order to avoid delay. Thus, the ten-month period during which the recusal motion was pending should not be attributed to the Government.

The second period of time excused by the Magistrate Judge concerned the continuing pendency of defendant Rose's severance motion.[3] The Magistrate

---

[3] Prior to the Magistrate Judge's issuance of the Decision and Order denying Speed's motion for release, there had been no determination as to the pending severance motion. In the Decision and Order, the Magistrate Judge denied defendant's severance motion without prejudice to defendant's right to renew his request before this Court.

concluded the following:

> [W]hile any calculation here would be somewhat arbitrary in nature...the Court discounts the Government's responsibility for delay in this case by an additional four months based on the severance issue, which would be equivalent to the time that has passed from the filing of supplemental suppression and dismissal motions in December through the present time.

(Dkt. No. 200) The Court is in agreement with the Magistrate Judge that the Government should not be held accountable for any delay associated with the pending severance motion, and that a period of four months is an appropriate time to attribute to this delay.

With respect to the parties' arguments regarding protracted motion practice and untimely *Brady* disclosures, the Court does not specifically attribute these delays to either side. This matter is complicated. It involves racketeering and racketeering allegations against multiple defendants, two murders, robberies, attempted robberies, narcotics trafficking and multiple firearms charges. If convicted, defendants face substantial prison terms, including the possibility of life imprisonment. It is axiomatic that this case would take longer, during its pretrial stages, than a more standard criminal matter. However, the period of delay has clearly become excessive and it appears that both the Government and defense counsel bear some responsibility for failing to move the matter forward in a more timely fashion. Therefore, this Court will exclude the 14 months discussed above as not being attributable to the Government, but finds that the

remainder of the time delay is neutral with respect to both sides.  As noted by Magistrate Judge Scott, discounting Speed's detention by a period of 14 months brings Speed closer to the ranges of pretrial detention expressly contemplated and approved by the Second Circuit.

The final factors, the gravity of the charges and the strength of the evidence upon which detention is based, weigh heavily in favor of the Government.  Defendant Speed is charged with being a member of a violent criminal enterprise which was engaged in drug trafficking, robberies, murders, and the illegal use of firearms.  One of the murder in aid of racketeering charges involves the murder of an FBI informant.  Speed himself is alleged to have participated in multiple robberies, a kidnaping, a murder, drug trafficking and firearms possession.  He is alleged to have gang affiliations.  Significantly, at the time defendant allegedly committed a number of the very serious acts charged in the Superseding Indictment, he had just recently been released from a previous condition of home confinement as a result of a prior conviction.

Defendant has an extensive criminal history, and a conviction with respect to the charges listed in the Superseding Indictment could subject him to a sentence of life imprisonment.  This potential term of incarceration, combined with the crimes of violence, kidnaping, extensive drug trafficking and use of firearms charged here trigger a presumption that defendant is both a flight risk and a danger to the community.  See 18 U.S.C. §3142(e) (establishing a rebuttable

9

presumption against pretrial release due to risk of flight where there is probable cause to believe that "the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act").  Defendant Speed has not submitted evidence sufficient to rebut this statutory presumption.

Finally, as noted by the Magistrate Judge, the strength of the Government's case with respect to defendant Speed appears to have grown over time.  The Government indicates that it has statements from witnesses detailing Speed's participation in the crimes charged and that Speed made incriminating statements at the time of his arrest.  In addition, the Government states that it has recordings of telephone conversations between defendant Eldridge and defendant Speed, at the time Eldridge was incarcerated, which serve as evidence of the existence of the enterprise as well as evidence of defendant Speed's consciousness of guilt.

After considering all factors, this Court is in agreement with the Magistrate Judge that the length of defendant's detention weighs in his favor, while the gravity of the charges and strength of the evidence in favor of detention weigh in favor of the Government.  The Court also finds that a period of 14 months of the delay should not be attributable to the Government, and that this factor benefits the Government as well.  For these reasons, the Court finds that continued detention is appropriate at this time.

In accordance with the Magistrate's Decision and Order, defendant

Speed's motion for release is denied. While the Magistrate Judge denied the motion without prejudice to defendant's ability to renew his request if the Government has not moved to set a trial date by March 14, 2014, given the recent filing of additional motions, this Court declines to adopt this same deadline.[4] However, this Court is extremely concerned that defendant Speed, along with the three other defendants in this matter, have been in pretrial detention for a prolonged period of time. The Court acknowledges that there are outstanding matters which must be resolved, and the parties are instructed to do everything in their power to move this case forward to trial as expeditiously as possible. Given the excessive period of pretrial detention faced by defendants, there could come a point, in the near future, where the length of detention alone warrants reconsideration of defendant's request.

## **CONCLUSION**

For the foregoing reasons and for the reasons set forth in Magistrate Judge Scott's Decision and Order, defendant Speed's motion for release is denied.

---

[4] Defendants Allen and Eldridge recently filed a motion for an evidentiary hearing and various other relief. The Court issued a briefing schedule and oral argument is to be held on December 12, 2013.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: December 12, 2013